IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| CHANDLER P. SMITH | : | CIVIL ACTION |
| Plaintiff, | : | |
| | : | |
| v. | : | No. 12-2189 |
| | : | |
| SECRETARY OF THE DEPARTMENT OF ENVIRONMENTAL PROTECTION OF PENNSYLVANIA, | : : : | |
| Defendant. | : : | |

**Goldberg, J.**                                                                                           **December 4, 2013**

**<u>MEMORANDUM OPINION</u>**

Plaintiff, Chandler Smith, an engineer by trade, has applied several times for positions with the Pennsylvania Department of Environmental Protection (hereinafter "DEP"). After a number of in-person interviews, wherein the interviewers became aware of Plaintiff's prosthetic leg, he was informed that he was not chosen for any of the open jobs. Plaintiff alleges that he was not hired because of his disability, which might require accommodations, or because of his age. He now seeks an order requiring the DEP to instate him to an open position. The Secretary of DEP, on the other hand, contends that this relief is unavailable under the Eleventh Amendment, which shields States (and State agencies) from lawsuits to which they have not consented.

Previously, on February 22, 2013, we dismissed Plaintiff's complaint, concluding that the relief sought was barred by the Eleventh Amendment. On September 16, 2013, the United States Court of Appeals for the Third Circuit vacated that order in part, finding that we neglected to consider separately whether Plaintiff's requested injunctive relief (as opposed to his claim for

damages) was similarly barred. Specifically, Plaintiff has urged that we order the Secretary of the Pennsylvania Department of Environmental Protection to hire him, and has posited that such relief is available under the exception to Eleventh Amendment immunity for suits against state officials for prospective injunctive relief. See Ex Parte Young, 209 U.S. 123, 159 (1908). As the Third Circuit noted, whether this type of relief is available "is a close question to which neither the Supreme Court nor any of the circuits provides a clear answer." Smith v. Sec'y of Dept. of Envtl. Protection of Pa., 2013 WL 5071305, at *2 (3d Cir. Sept. 16, 2013). Having now considered the issue, we conclude that at this stage of the litigation the Eleventh Amendment does not bar Plaintiff's requested relief, and thus we will deny what remains of the DEP's motion to dismiss.

I.   **Factual Background**

Plaintiff's pro-se complaint, read liberally, alleges that he is an environmental engineer of substantial training and skill, who has worked for twenty years in numerous positions. Plaintiff is also disabled, and requires a prosthesis to walk. Plaintiff was 52 years old at the time he filed his first charge of discrimination with the Equal Employment Opportunity Commission (EEOC) in August 2009.

After taking Pennsylvania's civil service exam, Plaintiff interviewed on August 29, 2008 at the Pennsylvania Department of Environmental Protection's Williamsport office. He was told during the interview that the job might require him to "inspect a landfill on short notice" and in wet conditions, which would require him to walk on steep slopes. The interview never progressed past this stage, presumably because Plaintiff was unable, or was perceived to be unable, to meet this requirement with his disability. We infer that no potential accommodations were discussed.

Later, Plaintiff was chosen to interview on three occasions for a position with DEP's Norristown office. During the first interview, held on September 2, 2008, Plaintiff alleges that two of the interviewers, despite presumably knowing of his disability, told him that he "could do the job." Plaintiff observed at the time that the workforce at DEP was generally young. At the next interview, on March 5, 2009, Plaintiff was advised that he would need an accommodation in order to perform the essential functions required of him as an engineer. He was thereafter told that someone else was selected for the position, but that he would be considered other openings.

At a further interview in May 2009 (and presumably in response to a question), Plaintiff asked what the interviewers meant by "motor skills" being an essential function of the job. Allegedly, the interviewers were unable to define the term, but offered to speak with the personnel department. Plaintiff later telephoned the office to follow-up, but was told that he did not get the job.

Convinced that his disability or age (or both) was the reason he was not chosen, Plaintiff filed a charge of discrimination with the EEOC on August 14, 2009. Thereafter, Plaintiff was interviewed again at the DEP's Williamsport office on February 22, 2010, and again was not offered a position. Plaintiff filed a second charge of discrimination with the EEOC on November 4, 2010, alleging that DEP's failure to hire him on this occasion was retaliation for his filing of the first discrimination charge. The lawsuit before us encompasses all three claims (disability discrimination, age discrimination, and retaliation).

The Secretary filed a motion to dismiss Plaintiff's complaint on October 1, 2012, based on the Commonwealth of Pennsylvania's Eleventh Amendment immunity.[1] We granted the motion on February 22, 2013, and Plaintiff appealed. As noted above, on September 16, 2013, the Court of Appeals for the Third Circuit vacated that Order in part. While affirming the

---

[1] Plaintiff previously withdrew his claims against the Commonwealth.

dismissal of Plaintiff's claims for damages, the Third Circuit vacated the portion of the order dismissing Plaintiff's claims for injunctive relief, and remanded for further consideration of whether that claim for relief is barred by the Eleventh Amendment. That is the issue to which we now turn.

**II.     Discussion**

The Secretary's motion to dismiss is premised on a lack of subject-matter jurisdiction pursuant to F.R.C.P. 12(b)(1), and asserts that sovereign immunity bars any relief at all on Plaintiff's claims.

The Eleventh Amendment renders a State immune from liability in federal court unless it has consented to suit or Congress has validly abrogated its sovereign immunity. College Sav. Bank v. Fla. Prepaid Postsecondary Educ. Expense Bd., 527 U.S. 666, 670 (1999). As we previously noted, Pennsylvania has not waived its immunity, 42 Pa. Con. Stat. § 8521, and the Supreme Court has concluded that, in the case of both the Americans with Disabilities Act and the Age Discrimination in Employment Act, Congress has not validly abrogated that immunity, Bd. Of Tr. Of Univ. of Ala. v. Garrett, 531 U.S. 356, 373-74 (2001) (ADA); Kimel v. Fla. Bd. Of Regents, 528 U.S. 62, 91-92 (2000) (ADEA). Plaintiff recognized this reality by withdrawing his claims against the Commonwealth.

But that does not end the inquiry. While Plaintiff may not sue a non-consenting State, he may sue a state official for prospective injunctive relief, on the theory, first established in the landmark case of Ex Parte Young, that an officer enforcing an unconstitutional state law or practice is "stripped of his official or representative character and is subjected in his person to the consequences of his individual conduct." 209 U.S. at 160. Once outside the protection of sovereign immunity, that official may be required by an injunction to conform future conduct to

4

the requirements of federal law. Thus, "when a plaintiff sues a state official alleging a violation of federal law, the federal court may award an injunction that governs the official's future conduct, but not one that awards retroactive monetary relief."[2] <u>Pennhurst State Sch. & Hosp. v. Halderman</u>, 465 U.S. 89, 102-03 (1984).

The process of determining whether a particular suit is barred by the Eleventh Amendment has been characterized as a "straightforward inquiry into whether [the] complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective." <u>Verizon Md., Inc. v. Public Service Comm'n or Md.</u>, 535 U.S. 635, 645 (2002) (alteration in original) (quoting <u>Idaho v. Coeur d'Alene Tribe of Idaho</u>, 521 U.S. 261, 298 (1997) (O'Connor, J., concurring)). Nevertheless, it is also true that "the difference between the type of relief barred by the Eleventh Amendment and that permitted under Ex Parte Young will not in many instances be that between day and night," <u>Edelman v. Jordan</u>, 415 U.S. 651, 667 (1974). Put another way, the permissibility of an injunction ordering the hiring of an applicant for state employment is, as the Third Circuit observed, a close question.

It appears that the great balance of authority (including authority to which we are bound to adhere) has concluded that an injunction requiring a state official to <u>reinstate</u> an employee terminated in violation of federal law does not offend the Eleventh Amendment. E.g. <u>Koslow v. Pennsylvania</u>, 302 F.3d 161, 179 (3d Cir. 2002) ("Koslow's claim for reinstatement, with accommodations for his disability, is the type of injunctive, 'forward-looking' relief cognizable under <u>Ex Parte Young</u>."); see also <u>Dotson v. Griesa</u>, 398 F.3d 156, 178 (2d Cir. 2005) ("A court

---

[2] For example, in <u>Edelman v. Jordan</u>, 415 U.S. 651 (1974), the Supreme Court addressed a district court order requiring the director of the Illinois Department of Public Aid to (1) process applications for aid within the time limits established by federal regulations and (2) pay benefits wrongfully withheld for the time period during which the federal regulations were in effect. The Court affirmed the first part of the order while reversing the second part, because the payment of past benefits was "in practical effect indistinguishable in many aspects from an award of damages against the State," and was "retroactive" rather than "prospective." <u>Id.</u> at 663-64, 666.

order of reinstatement, whether of government benefits or employment, is not barred by sovereign immunity."). The question posed by Plaintiff's claim is different, however. It asks whether there is any distinction between an injunction ordering reinstatement and an injunction ordering a new hiring. The Secretary argues that an injunction ordering a new hiring would not be "designed to end a continuing violation of federal law," Green v. Mansour, 474 U.S. 64, 68 (1985), but would be a remedy for a "discrete" violation of federal law that occurred in the past, and thus barred by the Eleventh Amendment.

The Secretary's argument fails to explain, however, why the wrongful failure to hire Plaintiff is any different than the termination of an employee. Because we would be bound to treat injunctive relief ordering reinstatement of someone wrongfully terminated as falling within the Ex Parte Young exception, the Secretary must identify a relevant difference between that act and a new hiring if it wishes for us to treat Plaintiff's case differently. The Secretary has not done so. Failure to hire and termination are both discrete acts in the sense that the Secretary uses the term. Cf. Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 114 (2002) ("Discrete acts such as termination, failure to promote, denial of transfer, or refusal to hire are easy to identify.") Indeed, the Supreme Court, even while concluding that Congress had not validly abrogated the States' sovereign immunity from private suits for money damages under Title I of the ADA, contemplated that prospective injunctions would be available to provide "federal recourse against [state] discrimination," despite the fact that most such discrimination would consist of discrete acts:

> Title I of the ADA still prescribes standards applicable to the States. Those standards can be enforced by the United States in actions for money damages, as well as by private individuals in actions for injunctive relief under Ex Parte Young.

Garrett, 531 U.S. at 374 n.9. It is the availability of this type of relief that "gives life to the Supremacy Clause," and ensures that States are answerable to federal law. Green, 474 U.S. at 68.

We recognize that one potential difference between instatement and reinstatement is that the former might be considered more of an "affirmative action" than the latter, which merely requires restoring to the payroll an employee who has already been hired, thus arguably less an intrusion into a State's affairs. In a footnote that has been the "subject of microscopic scholarly scrutiny", Knight v. New York, 443 F.2d 415, 420 (2d Cir. 1971), the Supreme Court stated that "a suit may fail . . . if the relief requested cannot be granted by merely ordering the cessation of the conduct complained of but will require affirmative action by the sovereign or the disposition of unquestionably sovereign property," Larson v. Domestic & Foreign Commerce Corp., 337 U.S. 682, 691 n.11 (1949). Variously called "Delphic," "troublesome," or a "wholly gratuitous dictum," see Vann v. Kempthorne, 534 F.3d 741, 751 (D.C. Cir. 2008) (collecting commentary), there now appears to be broad agreement that this footnote should not be read as making a request for "affirmative action" on the part of the official a sufficient condition for dismissal, e.g. id. at 752-54 (concluding that "affirmative action" likely refers only to "the performance of an obligation which belongs to the State in its political capacity," such as the collection of taxes (quoting Hagood v. Southern, 117 U.S. 52, 70 (1886))). Supreme Court decisions after Larson provide support for this narrow reading in approving relief that unambiguously required significant "affirmative action" on the part of a State. E.g., Milliken v. Bradley, 433 U.S. 283, 288-90 (1977) (approving injunction requiring the institution of remedial educational programs for victims of segregation). We decline to conclude that the Larson footnote can bear the weight of so fine a distinction in remedy between instatement and reinstatement.

Accordingly, at this early stage of the litigation, we hold that Plaintiff's failure to hire claim may proceed, insofar as it seeks only an order directing the Secretary to hire him. See Idlisan v. SUNY Upstate Med. Univ., 2013 WL 495409, at *4 (N.D.N.Y. Jan. 16, 2013) (concluding that plaintiff's claim against state official "in her official capacity for the equitable remedy of instatement is not barred by the Eleventh Amendment").

**III.   Conclusion**

Binding precedent establishes that injunctive relief ordering reinstatement of an employee terminated in violation of the ADA is not barred by the Eleventh Amendment. The Secretary has failed to offer a persuasive reason why the remedy of instatement for failure to hire should be treated any differently, and none is immediately apparent. Accordingly, the motion to dismiss for lack of subject-matter jurisdiction will be denied.[3]

An appropriate order follows.

---

[3] Although our prior order referred to the standard for a Rule 12(b)(6) motion to dismiss for failure to state a claim, and the Secretary argued on appeal that Plaintiff's claims are insufficiently plead, the Secretary has not made that argument in this Court, either in its previous motion to dismiss or its most recent brief. We merely observe, as did the Third Circuit, that Plaintiff's complaint alleges that he is disabled, and that several DEP interviewers made reference to his disability before refusing to hire him. The Complaint also alleges that Plaintiff observed a work force significantly younger than he is. Although these allegations are scant, it appears they at least suffice to communicate to the Secretary the relevant times and events underlying Plaintiff's claims (in any event, the Secretary has not complained that he is unable to discern the wrongdoing of which he is accused).